THE STATE OF KANSAS v. JAMES McNASPY.

**No. 10885.**

1. EXTRADITION—*voluntarily waived and arrest submitted to in another state under warrant issued here, fugitive may be put on trial for offense different from that charged in warrant.* A fugitive from the justice of this State, residing in another state, for whose arrest an officer has no other authority than a warrant issued by a justice of the peace of this State, and who is informed by such officer of his lack of authority, but who, at the officer's instigation, waives the necessity of requisition papers and submits to arrest upon the justice's warrant, and is brought by the officer back to this State, will be held to have voluntarily come within the jurisdiction of the court; and may, immediately upon his arrival here, be prosecuted for another offense than the one described

in the warrant and to respond to which he agreed to return. [Doster, C. J., dissenting.]

2. INFORMATION FOR FORGERY—*by interpolation, must set forth copy of instrument and show materiality of interpolated words.* In prosecutions for forgery committed by the insertion in an instrument of additional words materially changing its terms, the information should set forth a copy of the instrument, so as to show the interpolated words and their materiality; or reasons for the failure to do so, other than mere lack of knowledge, should be stated in the information.

Error from Dickinson District Court. Hon. O. L. Moore, Judge. Opinion filed November 6, 1897. *Reversed.*

*R. H. Kane,* County Attorney, for the State.
*Stambaugh & Hurd,* for appellant.

DOSTER, C. J. This is an appeal from a sentence of conviction. A complaint was filed, by one Mina C. Hart, with a justice of the peace of Dickinson County, charging the defendant with the forgery of a promissory note for $163, purporting to have been made by one James M. Harmon, with the intent to defraud one H. M. Budd. A warrant of arrest was issued upon this complaint and placed in the hands of a deputy sheriff. This officer proceeded to Thayer, Mo., where the defendant was, and procured the marshal of that city to arrest him. He then informed him that he had a warrant for his arrest, but that, having no requisition by the Kansas authorities upon those of Missouri, he had no right to take him into custody and bring him back to this State, and asked him whether he would come back without a requisition, and would sign a stipulation to that effect. The defendant said he would do so ; whereupon he and the deputy sheriff went to the office of a notary public, where together they read the warrant over, and the defendant

agreed in writing that he would return to Kansas with the officer in pursuance of the authority of the warrant. He was then put in the custody of the marshal of Thayer and confined in the city prison for several hours, until the arrival of a train for Kansas. He returned to Abilene in company with the deputy sheriff, and soon after his return another warrant for his arrest was issued; and was served upon him by the same officer. This warrant was based upon a complaint made by one Albert Wendlandt, charging the forgery of a promissory note, purporting to be the note of said Wendlandt, by increasing it from $30 to $130, with intent to defraud said Wendlandt. This complaint and this warrant constitute the basis of the present case. It does not appear that the deputy sheriff who went to Missouri for the defendant, or the city marshal there who arrested and confined him, used any coercive or deceptive measures to get him back into this State or to induce him to consent to return. Since his first arrest he has been continuously in custody. Proper objections were made by the defendant to any proceedings upon the information filed against him, upon the ground that he had been fraudulently induced to return to the jurisdiction of this State to answer a different charge than that for which he was placed on trial. These objections were overruled. He was adjudged guilty, and from the sentence of conviction appeals to this court upon the above-stated claim of error and upon others presently to be noted.

A majority of the court are of the opinion that, under the above-recited state of facts, it must be adjudged that the defendant came voluntarily into the jurisdiction of the court, and that none of the principles upon which accused persons, going or being car-

ried from one state to another to answer

1. Fugitive may be prosecuted for different offense than charged in warrant, when.

to charges of crime, are allowed immunity from prosecution upon other criminal charges, can be invoked by him. . I am strongly of the opposite opinion, for the reasons hereafter stated.

No copy of the note, either in its original or altered form, was set forth in the information, nor was any statement made of the substance of those parts in which the alteration of its amount occurred. By way of excusing this omission, the information alleged : ''A more particular description of which instrument of writing, to wit, said promisory note, cannot now

2. Information should show materiality of forged words.

be given, for want of sufficient knowledge ;'' but no reason was given why knowledge could not be obtained. A motion to quash the information, for failure to set forth the instrument so as to show wherein the forgery occurred, was overruled. It should have been sustained. In cases of forgery it is incumbent upon the prosecution to set out the forged instrument, and if such is not done, a sufficient reason for the omission should be given ; as that it had been lost or destroyed, or is in the hands of the defendant, or is otherwise inaccessible. The authorities are agreed to this effect. Wharton's Criminal Law, vol. 1 ( 10th ed.), § 727, *et seq.;* Wharton's Precedents of Indictments, § 264; Bishop's Criminal Procedure, vol. 1, § 553.

'' In an indictment for forgery effected by interpolating words in a genuine instrument, as in this case by raising the amount of a note, the added words should be quoted ; and the position given them in the instrument should be shown, so that it it may appear how they affect its meaning.'' *State v. Bryant,* 17 N. H. 323.

Other claims of error are made. We have examined all of them and do not regard them as meritorious; but, for the defect in the information, the appeal is sustained, the sentence ordered vacated, and direction given to sustain the motion to quash the information.

Recurring now to the question first discussed, I think that this defendant should be discharged from custody, upon the ground that he was fraudulently induced to come within our jurisdiction, to answer a charge which was withdrawn immediately upon his arrival and for which the present accusation was at once substituted. Whether the authorities of Dickinson County, in any of the steps taken to secure the apprehension and trial of the defendant, were possessed of an actual fraudulent intent, or whether they acted without a realization of the turpitude of their conduct, is immaterial. Certain it is, that what they did operated to deceive the defendant as to their purpose in bringing him from Missouri to this State, and was such conduct as they should have known would have the effect of deceiving him. They are, therefore, in my judgment, precluded from disavowing a fraudulent intent. Representations were made to the defendant that he was accused by one Hart of the crime of forging a note upon one Harmon with intent to defraud one Budd, and he was asked whether he would waive the formality of a requisition upon the Governor of Missouri, submit to arrest upon an ordinary warrant, and accompany the officer back to the scene of the alleged offense in Kansas. He consented to do so, presumably conscious of his ability to prove his innocence of that charge. No sooner was he fully within the jurisdiction of the court than the State, as though it contemplated the ensnarement of the defendant in a trap, abandoned the charge to which he had been induced to respond and preferred an en-

tirely different one, made by one Wendlandt for the forgery of a note upon said Wendlandt with intent to defraud him, the said Wendlandt. That was a fraud upon the defendant; and the court should not have permitted its process to be used to give it effect.

It will not do to say that the officers violated no faith with the defendant because as an inducement to return they made no promise of immunity from arrest upon other charges. The making of the first charge was by reasonable implication a representation that it, and it alone, was the one upon which he was to be tried. There is not, I confidently believe, a single case decided upon the principles of the extradition laws, or otherwise, in which a denial of the defendant's rights in this respect has been rested upon such narrow grounds.

Nor will it do to say that the State is not bound by an implied agreement upon the part of the officers, to prosecute upon the charge first made and upon no others, resulting from their conduct in inducing him to agree to return to answer such charge alone. The State set in motion its legal machinery for the defendant's apprehension and trial, and it is bound by the action of its officers in securing jurisdiction of his person. It is inconsistent with the high faith and dignity of the sovereign to countenance the practice of subterfuge and artifice in its behalf, or to accept an advantage over one of its citizens secured by the trickery and chicane of its official servants. Its grace and honor in this respect are legal obligations enforceable by the courts. As remarked by Mr. Justice VALENTINE in *The State v. Hall* (40 Kan. 342) :

" The State should not be allowed to obtain jurisdiction of a fugitive from justice for one purpose, and then take advantage of that jurisdiction thus obtained and use it for another and a different purpose. A State

has no more right to act fraudulently or unfairly than an individual person has, and what the State does by its officers or agents it does for itself.''

In such cases the limitations of good faith and fair dealing which rest upon private individuals likewise rest upon the State.    The State permits no fraudulent use of its process in controversies between its citizens, and it would be strange indeed if the sovereign should stoop to the performance of an act which it esteems dishonorable in them.    Where a person by fraud and deceit inveigles another into the jurisdiction of the court for the purpose of suing him and of obtaining service of summons upon him in that jurisdiction, the summons and service thereof should be set aside. Such an abuse of judicial process cannot be tolerated in any court of justice.    *Van Horn v. Great Western Mfg. Co.*, 37 Kan. 523.

I do not believe there is a single case dissenting from the above statement of law.    The principle thus declared is the true basis for all the decisions affirming the right of extradited persons to be tried alone upon the charge first preferred.    Good faith is the *raison d'etre* of them all; good faith, not merely towards the sovereign surrendering the fugitive, but towards the fugitive as well.    This was the controlling reason for the decision in *The State v. Hall*, supra, and *The State v. Simmons* ( 39 Kan. 262).    In the former case it was remarked :

''It is a general maxim of law that judicial process shall not be abused.    But to try a person for an offense other than the one for which he was extradited would be an abuse of judicial process.    Within this broad and general maxim above referred to, is included the following more definite rule of law, to wit: Where the presence of a person has been changed from a place outside of the territorial jurisdiction of a court of justice to a place within such jurisdiction,

and this change has been procured through the in-
strumentality of another person and upon a pretext
of thereby accomplishing some particular purpose,
such first-mentioned person cannot, after his presence
has been thus obtained within the territorial jurisdic-
tion of the court, and before he has had an opportunity
to return, be prosecuted in such court by the person
who has thus been instrumental in procuring his
presence, for the purpose of accomplishing some
wholly different purpose.''

In the latter case it was also remarked :

'' It would not be proper for any court in any state
to sustain a service of any judicial process, either
civil or criminal, where the service of such process
was obtained only by the infraction of some law, or
in violation of some well-recognized rule of honesty or
fair dealing, as by force or fraud. Such a service would
not only be a special wrong against the individual
upon whom the service was made, but it would also
be a general wrong against society itself — a violation
of those fundamental principles of mutual trust and
confidence which lie at the very foundation of all or-
ganized society, and which are necessary, in the very
nature of things, to hold society together.''

Counsel for the State, in the case under considera-
tion, assumes that the authority of the case of Hall,
*supra*, is now at an end, because overruled by the
later decision of the Supreme Court of the United
States in *Lascelles v. Georgia*, 148 U. S. 537. There is,
however, no conflict between them. Lascelles claimed
immunity from prosecution upon charges other than
the one for which extradited, because of the protec-
tive provisions (as he viewed them) of the Federal
Constitution and statutes. The court simply held
against his theory of constitutional and statutory inter-
pretation and denied his claim of constitutional right.
The subject of limitations upon the right of pros-
ecution, growing out of the principles of inter state
comity and of good faith and honest dealing with

the defendant, was not adverted to because not involved in the case. Whether, since the decision of *Lascelles v. Georgia*, a claim of immunity from additional prosecution can still be rested upon constitutional grounds, certain it is, that the general grounds of justice are still open. Upon these grounds, the decisions of *The State v. Hall* and *The State v. Simmons*, supra, were based, and, as I think, the one in this case should be based.