Argued April 21; reversed June 29, 1943

OMICRON CO., INC., v. WILLIAMS ET UX.

(139 P. (2d) 547)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, LUSK, BRAND and HAY, Associate Justices.

*Paul R. Harris,* of Portland (C. J. Stocklen, of Portland, on the brief) for appellants.

*Sidney Teiser,* of Portland (Teiser & Keller, of Portland, on the brief) for respondent.

BAILEY, C. J. This action was instituted by Omicron Company, Inc., a Washington corporation, to recover from the defendants, J. F. Williams and his wife, the sum of $1,152.70 with interest at the rate of 10 per cent per annum from March 10, 1939. From a judgment in favor of the plaintiff for the above specified amounts the defendants have appealed.

Under date of September 28, 1927, the defendants executed and delivered to Northern Savings and Loan Association, a Washington corporation, a mortgage on real property in Seattle, Washington, to secure payment of the sum of $1,475, evidenced by a promissory note of even date due in three years. On October 15, 1928, the defendants conveyed the real property, subject to the mortgage, to Loren Grinstead. After that conveyance the defendants made no payments on either the interest or principal of the note. Interest payments were made by Mr. Grinstead, however, with more or less regularity up to about October 1, 1930. Thereafter until August 26, 1932, the rental from the mortgaged property was received by Northern Savings and Loan Association and applied as payment of the interest.

Proceedings were instituted by that company in the state of Washington in 1933 to foreclose the mortgage, and a decree of foreclosure was entered on October 29, 1938. The property was sold at sheriff's sale in March, 1939, for $2,000, which left as of March 10, 1939, a deficiency of $1,152.70 on the indebtedness.

Prior to April, 1931, the defendants removed to the state of Oregon and have thereafter continuously been residents of this state. They were not personally served

and did not appear in the foreclosure proceedings, and therefore no personal judgment was therein rendered against them.

The plaintiff is the holder of the note and mortgage by assignment. The complaint herein was filed April 30, 1941. This action is based on the mortgage, which instrument was sealed, to recover a balance of $1,152.70 remaining on the indebtedness after the mortgaged property had been sold on foreclosure. It was brought within ten years (§ 1-203, O. C. L. A.) after the last payment of interest was credited on the indebtedness. When the complaint was filed recovery on the note was barred by the six-year statute of limitations, § 1-204, O. C. L. A.

The mortgage is on a printed form prepared for and used by the mortgagee. At the beginning of it is a statement that the mortgagors mortgage to the loan company the property therein described, to secure payment of the sum of $1,475, which indebtedness "is evidenced by a promissory note signed by the mortgagors". Then follow the usual provisions as to the mortgagors' duty to pay taxes and other encumbrances against the property and to keep it insured. This language next appears:

"Should the mortgagors fail to keep any of the foregoing covenants, then the mortgagee may itself perform them, and all expenditures in that behalf shall be secured by the lien of this mortgage and shall bear interest at the rate of ten per cent per annum from payment until repaid, and shall be repayable by the mortgagor —— on demand.

"If default be made in the payment of any interest on, or installment of this debt, or in any of the covenants herein contained, then, in such or either of said cases, the balance or unpaid principal with accrued interest, and all other indebtedness

hereby secured, shall at the mortgagee's election become immediately due, without notice, and bear interest at the rate of ten per cent per annum from date of default until paid, and this mortgage may be foreclosed, PROVIDED, ALSO, that the failure of the mortgagee to take advantage of any default shall not be construed a waiver in respect thereto or in respect to any other default.

"In the event that the mortgagee places this mortgage and note in the hands of an attorney for collection after default, or to foreclose this mortgage or appear by attorney to protect the lien hereof against the claims or demands of others, the mortgagors shall pay the mortgagee such sums as costs of protection and collection and also attorney's fee, as are reasonable; and shall pay also such reasonable cost of searching records and abstracting the same as may necessarily be incurred in foreclosing this mortgage or defending the same, all of which sums shall be secured hereby, and be included in the decree of foreclosure.

"The mortgagors consent to a personal judgment for the payment of the debt hereby secured, irrespective of this security."

The last sentence of the above-quoted matter is asserted by the plaintiff to be an express covenant of the defendants to pay the debt for which the mortgage was given as security. Both the note and the mortgage were executed in the state of Washington, and both provide that they shall "be construed in accordance with the laws of the state of Washington". Regardless of that provision, counsel for both the plaintiff and the defendants refer to, and to a considerable extent rely upon, the statutes of Oregon. Section 68-101, O. C. L. A., thus reads:

"No mortgage shall be construed as implying a covenant for payment of the sum thereby intended to be secured; and when there shall be no express

covenant for such payment contained in the mortgage, and no bond or other separate instrument to secure such payment shall have been given, the remedies of the mortgagee shall be confined to the lands mentioned in the mortgage."

The substance of the foregoing section of our code is also found in Rem. Rev. Stat. (Washington), §§ 1117 and 1119. The question presented is whether there is an express covenant in the mortgage before us for payment of the sum thereby secured. Recovery is sought on the covenants in the mortgage, not those in the note.

In order to construe the mortgage properly, "the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it, may be shown": § 2-218, O. C. L. A. Both the note and the mortgage were on printed forms prepared by the mortgagee, Northern Savings and Loan Association, with its name printed in the note as payee and in the mortgage as mortgagee. It may reasonably be assumed that the mortgagee exercised care and deliberation in preparing the forms and that they were not intended solely for the particular transaction here involved, but were used generally by the loan company. Both the note and the mortgage were numbered "639".

The parties to the mortgage, at the very beginning of that instrument, expressly stipulated that the debt for which the mortgage was given as security was "evidenced by a promissory note signed by the mortgagors". Nowhere in the instrument itself is it stated that the debt is evidenced by the mortgage.

Following the above-mentioned stipulation of the parties, the remainder of the instrument has reference to the security. It expressly provides that if the mortgagors fail to "keep any of the foregoing covenants",

the mortgagee may perform the same; that all expenses incurred by the mortgagee in that connection shall be repaid by the mortgagors; and that the mortgagors "shall pay" the reasonable cost of searching records, also an attorney's fee, incurred by the mortgagee in connection with the security.

It is apparent from the foregoing analysis of the instrument that the parties to it had no difficulty in expressing their intention as to the personal liability of the mortgagors to pay the sums expended by the mortgagee in connection with the "protection" of the property and the foreclosure of the mortgage. The instant action, however, was not brought for recovery of those expenses. Had the parties to the mortgage intended it to contain an express covenant on the part of the mortgagors to pay the indebtedness, such a covenant could have been worded in precise language, as were the above-mentioned agreements of the mortgagors.

■ At the time that the note and mortgage were executed, the limitation of actions in the state of Washington as to sealed and unsealed instruments was the same, six years: § 157, Rem. Rev. Stat. Of that fact we are authorized to take judicial notice: § 2-503, O. C. L. A.; *Haley v. Sprague,* 166 Or. 320, 111 P. (2d) 1031; *Ex parte Paulson,* 168 Or. 457, 124 P. (2d) 297. Inasmuch as the note and mortgage were intended to be construed in accordance with the laws of the state of Washington, an express covenant for payment in the mortgage would not have prolonged the period in which action could be brought in that state on the debt, for the reason that the same limitation of action applied to the sealed mortgage as to the unsealed note.

The question, therefore, is: What did the parties intend by the statement that, "The mortgagors consent

to a personal judgment for the payment of the debt hereby secured, irrespective of the security''? No judgment could be entered against the mortgagors except in an action for recovery of the debt. And the debt was evidenced by the note only, not the mortgage. An action for recovery of the debt would ordinarily have been brought on the note, because that instrument contained the terms and conditions of the agreement between the parties as to payment of the debt.

■■ The statement quoted is to be construed as an agreement that recovery on the note should not be limited to the mortgaged property, and that in an action thereon a personal judgment could be rendered against the mortgagors. It was not the intention of the parties that the mortgagors' consent to personal judgment be construed as an express covenant for payment of the debt. If there were any uncertainty, and we believe that none remains, as to the meaning of that provision in the written instrument before us, the language thereof should be ''construed most strongly against'' the mortgagee, ''the party who used the doubtful terms'': *Loomis v. MacFarlane,* 50 Or. 129, 91 P. 466.

The judgment appealed from is reversed and the cause is remanded to the circuit court with direction to enter judgment in favor of the defendants.

HAY, J. (specially concurring). The mortgage in this case contained the following provision:

''The mortgagors consent to a personal judgment for the payment of the debt hereby secured, irrespective of this security.''

As an express promise or covenant, this provision is exactly what it purports to be and no more, viz.,

consent to the entry of a personal judgment against the mortgagors, "for the payment of the debt". It is as if they had said, "if suit is brought to foreclose this mortgage, we consent to a personal judgment against us 'for the payment of the debt hereby secured' "; or, "we consent that a personal judgment may be taken against us in respect of this debt". In order to construe the proviso into a covenant to pay, it is necessary to say that the language used, which does not express a promise to pay the debt, implies one. However, in Oregon, a mortgage cannot be construed so as to imply such a promise. (Section 68-101, O. C. L. A.)

The majority opinion points out that, at the time when the complaint was filed, the note was barred by the six-year statute of limitations. (Section 1-204, O. C. L. A.; 34 Am. Jur., Limitation of Actions, sections 338, 339 and 353.) By the same statute, the debt itself was barred likewise.

The right of action in personam upon the debt having been barred by the statute of limitations, it seems clear that there can be no action upon the covenant to permit personal judgment to be entered *upon the debt*. The covenant cannot possibly have the effect of galvanizing a dead debt into life. The judgment should be reversed.

———

BRAND, J. (dissenting). Four paragraphs of the mortgage are set forth in full in the opinion of the majority. They contain promises to pay which are to be found in the mortgage only. If the mortgagor fails to pay taxes, the mortgagee may pay them, and they shall be "repayable by the mortgagor." This, surely, is the equivalent of an "express promise to pay"

though the word "promise" is not employed. It is also provided that under certain circumstances the mortgagors shall pay the cost of searching records and the like. Along with these provisions, promissory in nature and upon which action based on the mortgage alone might be brought, there appears the final paragraph to the effect that "the mortgagors consent to a personal judgment for the payment of the debt hereby secured, irrespective of this security." If, in lieu of those words, the instrument had provided that the mortgagors agree to pay any deficiency after the sale on foreclosure of the mortgaged property there would, I suppose, be no question as to the right of the plaintiff to recover. Upon such a promise a personal judgment would be rendered. The fact that the mortgagors "consent to a personal judgment" seems to me to be a distinction without a difference. Consent implies an affirmative agreement to the very action of the court which would be taken upon a direct promise to pay. It is at least a covenant to confess judgment, and I construe it to be the substantial equivalent of an express covenant for payment. To hold that an agreement for a personal judgment does not include the duty to pay, which duty is always imposed by a personal judgment, seems to me to rest upon an unduly narrow construction of the words used. No personal judgment could have been rendered against the mortgagors in the State of Washington, where they were not present. The mortgage was foreclosed against the real property. There was a deficiency. "Irrespective of this security" the plaintiff, having secured personal jurisdiction of the mortgagors in Oregon, should, I think, be entitled to a personal judgment for that deficiency based upon the affirmative consent thereto as contained in the mortgage. We cannot by a process of construction excise the

provision in question from the mortgage. Yet, if it be not given effect in this case it is difficult to conceive of any probable circumstances under which it would ever be given any effect.

Although we are authorized in construing the instrument to consider the circumstances under which it was made and the situation of the subject of the instrument and of the parties to it, such an aid to construction seems to me unnecessary in view of the clear language used.

With due deference to the weighty opinion of the majority, I think that the two judges of the circuit court, who passed upon the question, correctly held that consent to a personal judgment for the payment of the debt irrespective of the security should be deemed to be an express promise to pay within the meaning of the statute O. C. L. A. 68-101.

I am also persuaded that the claim for deficiency based on that covenant was not barred by the statute of limitations, for the reason that the running of the statute was tolled by payments made by Grinstead, the grantee of the mortgagor, before the statutory period had run. Since the majority entertains a contrary view concerning the first question, and the case is therefore to be reversed upon the ground that there is no express promise to pay, it becomes unnecessary for me to amplify my views on the statute of limitations.

Being of the opinion that the judgment should be affirmed, I dissent.

LUSK, J., joins in this dissent.